IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FIRST TIME VIDEOS LLC, a
foreign corporation,

Case No. 1:12-cv-20921-JAL

      Plaintiff,

v.

JOHN DOES 1-76,

      Defendants.

_____/

## NOTICE OF IMPROPER CONDUCT/MOTION FOR SANCTIONS AND REQUEST FOR A HEARING

John Does 74.4.213.245 and 74.178.230.219, (the "LS Law Does")[1] by and through

undersigned counsel, submit the following Notice of Improper Conduct/Motion for Sanctions.

## INTRODUCTION

Plaintiff alleges that 76 unrelated Doe defendants, including the LS Law Does, infringed on

Defendant's copyright through Internet Protocol ("IP") addresses.  Plaintiff issued a Subpoena

Duces Tecum (the "Subpoena") to a third-party internet service provider ("ISP") to obtain the

identifying information (name, address, telephone number, & MAC address) associated with the

IP addresses ("Identifying Information").   The LS Law Does anonymously, through the

undersigned, moved to quash the Subpoena ("Motion to Quash) and dismiss the matter for

improper joinder ("Motion for Improper Joinder").   After a hearing, wherein the undersigned

counsel appeared on behalf of the LS Law Does, the Magistrate Judge denied the Motion to

Quash and issued a report and recommendation as to the Motion for Improper Joinder, to which

the LS Law Does filed objections [DE 28].

---

[1] The LS Law Does are identified by their IP Addresses so as to remain anonymous.

Before the District Court ruled on the objections, having obtained the Identifying Information of the LS Law Does, Plaintiff's counsel contacted the LS Law Does directly without the undersigned's permission and made significant threats to compel settlement. Plaintiff's counsel's contact with the LS Law Does is in clear violation of the Florida Rules of Ethics. The nature of these types of cases is such that defendants secure counsel for the purpose of avoiding the harassment and abusive settlement tactics employed by the plaintiffs. Thus, Plaintiff's counsel's actions nullify the expense and efforts that the LS Law Does have employed to protect themselves. Such actions warrant sanctions.[2]

### BACKGROUND

This is one of the hundreds of cases filed by adult film companies against Internet subscribers for purportedly downloading pornographic copyrighted films through a BitTorrent Protocol. Plaintiff initiates the case by filing the action against multitudes of subscribers through their IP Addresses and then issues the Subpoena to the various ISP's to obtain the subscribers Identifying Information. The ISP's send a notice to each of the subscribers and advises them of their option to retain legal counsel to contest the Subpoena ("ISP Notice"). The subscribers who do not object to the Subpoena have their Identifying Information turned over to the Plaintiff. Upon receipt of this information, Plaintiff initiates a campaign to coerce each subscriber into settlement ("Settlement Campaign"). The Settlement Campaign is akin to debt collection wherein Plaintiff sends demand letters and answers to purported "Frequently Asked Questions" followed up by phone calls threatening to sue the subscriber for $150,000.00 unless they settle the action for anywhere from $3,000.00 to $5,000.00.

---

[2] The undersigned counsel files this motion for sanctions begrudgingly, and only after having confronted this issue several other times in identical circumstances. At this point, the undersigned turns to the Court for guidance on how to proceed.

Upon receiving the ISP Notice and researching the types of methods employed by plaintiffs in these cases, subscribers often retain counsel to fight or resolve these disputes. For many of the subscribers, including the LS Law Does, the primary purpose of retaining counsel is to avoid having to deal with the Settlement Campaign.

Upon being retained, counsel for the LS Law Does filed motions to quash the subpoena ("Motion to Quash") and motions to dismiss for improper joinder ("Motion for Misjoinder"). After the filing of a response/reply, the Court held a hearing at the request of Plaintiff's counsel. The Court heard oral argument on June 27, 2012 and thereafter denied the LS Law Does Motion to Quash and issued a report and recommendation for the denial of the Motion for Misjoinder. Upon receiving a favorable ruling on the Motion to Quash, Plaintiff's counsel contacted the LS Law Does ISP's and requested their Identifying Information, notwithstanding that Plaintiff's counsel could have contacted the undersigned directly regarding any attempts to resolve this matter. Upon receipt of the LS Law Does Identifying Information, Plaintiff sent demand letters[3] directly to the LS Law Does and then followed up with phone calls.[4] *See* Declaration of IP Address 74.178.230.219, attached hereto as ***Exhibit A.*** The threats included in the Demand Letter, and potential misrepresentations and inaccuracies are included below:

- "In light of these factors, we believe that providing you with an opportunity to avoid litigation by working out a settlement with us, versus the costs of attorneys' fees and the uncertainty associated with jury verdicts, is very reasonable and in good faith."

   - Plaintiff is clearly encouraging the subscriber not to consult an attorney.

- "In exchange for a comprehensive release of all legal claims in this matter, which will enable you to avoid becoming a named Defendant in our lawsuit, our firm is

---

[3] The demand letter indicates it was sent by "Prenda Law" and signed by opposing counsel, Joseph Perea on July 10, 2012. However, Joseph Perea, P.A. officially substituted in for Prenda Law on June 1, 2012 for purposes of these proceedings. (*See* DE 21). Thus, it is unclear whether in making the improper contact with the LS Law Does, Mr. Perea was acting on behalf of Joseph Perea, P.A. or Prenda Law. *See* Exh. A-1.

[4] Plaintiff's counsel or his representative made calls to one of the LS Law Does on July 17, 2012 at 8:44 am and then again at 8:46 am. Exh. A at ¶4-5.

authorized to accept the sum of $3,400.00 as full settlement for the claim.  This offer will expire on 7/25/2012 at 4:00 pm.

- A $3,400.00 settlement for the alleged illegal downloading of a single $20.00 film is simply not a reasonable offer to a subscriber that is not represented by counsel. Further the suggestion that the option is either: (1) pay $3,400.00 or (2) be named personally as a defendant shows that the Plaintiff is not proceeding in good faith, as it has no information suggesting the recipient of the letter actually carried out the download at issue.

- "If you reject our settlement offers, we expect to serve you with a Complaint and commence litigation."

  - Plaintiff's threat is misrepresentative.  Plaintiff has no intention of serving the subscriber with a Complaint.  It behooves the Court to inquire into the number of cases in which it has actually served the subscriber with a Complaint.  Again, Plaintiff is telling the recipient of the letter that it must either settle or be named as a defendant, despite the fact that Plaintiff has no additional information other than the fact that the recipient's ISP identified them as the name on the internet bill related to a certain IP Address.

- "Why did you receive this letter?  A: You received this letter because copyright infringement involving your Internet account was detected by our agents and corroborating information was provided by your ISP."

  - It is misrepresentative to suggest that the ISP corroborated that the subscriber's Internet account was associated with infringement.

- What if I have an unsecured wireless network/router?  A: **The Internet Service Provider (ISP) account holder is responsible for securing the connection and may be legally responsible for any infringement(s) that result from an unsecured wireless network/router.**  This "defense" has been raised in many criminal matters regarding such crimes as child pornography, and the courts have generally rejected this defense.  As far we are aware, this defense has never been successfully argued, in multiple contexts, including child pornography and civil copyright infringements actions."

  - Plaintiff can point to no law to suggest that an account holder is responsible for an unsecured internet connection.

- "I haven't infringed on a copyright, why did I receive this notice? A: If you are unfamiliar with the content, we normally find that the infringement was the result of a spouse, child, roommate, employee, or business associate uploading, downloading or otherwise sharing or displaying the copyright protected material over your internet connection.  **Infringements can also result from an unsecured wireless network. In any of these scenarios the Internet Service Provider (ISP) account holder may be held legally responsible for the infringement(s) and settlement fees."**

- Plaintiff can point to no law to suggest that an account holder is responsible for an unsecured internet connection.

• "The decision to hire an attorney is completely up to you. We cannot give you legal advice, but speaking with an attorney is generally highly advisable. Some infringers have indicated to us that our settlement offer is significantly lower than the costs associated with hiring an attorney and litigating the matter through trial."

- The inclusion of the last sentence is clearly an attempt to discourage the subscriber from retaining counsel.

Exh. A-1.

Upon receipt of the demand letter and the follow-up phone calls from Plaintiff's counsel, the LS Law Does immediately contacted the undersigned. The undersigned immediately contacted Plaintiff's counsel directing him to cease and desist all communications with the LS Law Does pending this motion for sanctions.[5]

## LEGAL AUTHORITIES AND ARGUMENT

"In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." FLA. BAR R. PROF'L CONDUCT 4–4.2(a). It is well settled that Florida courts have a duty to see that the Rules of Professional Conduct, such as Rule 4-4.2(a), are complied with, and to take steps necessary to enforce those Rules. *Brassell v. Brethauer*, 305 So. 2d 217, 220 (Fla. 4th DCA 1974); *see also Matrix Employee Leasing, Inc. v. Pool*; 46 So.3d 1147, 1148 (Fla. 1st DCA 2010). In particular, courts enforcing the Florida ethical rules have the "power to disapprove and prohibit particular practices or proceedings involving attorneys' conduct which appear to us to run counter to the

---

[5] Plaintiff's counsel will likely argue that the contact was inadvertent. However, after the undersigned emailed Plaintiff's counsel regarding the improper contact with the LS Law Does, Plaintiff's counsel advised that notwithstanding that the undersigned had filed motions on behalf of the LS Law Does and appeared at a hearing in furtherance of the motions, Plaintiff's counsel was not aware that the LS Law Does were represented by counsel. (*See* July 17, 2012 email attached hereto as ***Exhibit B***). Moreover, any claim that the contact was unintentional is belied by the multiple times in which an unauthorized contact has occurred. In the past year, the undersigned has informed Plaintiff's counsel of several instances in which an improper contact was made.

spirit and purpose of the rules governing the practice of law, where necessary to maintain the

public confidence in and respect for the bar and the courts, and to preserve the integrity of the

forum and the process provided for adjudication of controversies between opposing litigants."

*Bammac v. Grady*, 500 So. 2d 274, 279-80 (Fla. 1st DCA 1987).[6]

  Furthermore, the Court is engrained with inherent authority to sanction. This Court has

stated that:

> It has long been understood that "[c]ertain implied powers must necessarily result to our
> Courts of justice from the nature of their institution," powers "which cannot be
> dispensed with in a Court, because they are necessary to the exercise of all others."
> *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); *see also Roadway
> Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)
> (citing *Hudson*). For this reason, "Courts of justice are universally acknowledged to be
> vested, by their very creation, with power to impose silence, respect, and decorum, in
> their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 6 Wheat.
> 204, 227, 5 L.Ed. 242 (1821); see also Ex parte Robinson, 19 Wall. 505, 510, 22 L.Ed.
> 205 (1874). These powers are "governed not by rule or statute but by the control
> necessarily vested in courts to manage their own affairs so as to achieve the orderly and
> expeditious disposition of cases." *Link v. Wabash R. Co*., 370 U.S. 626, 630-631, 82
> S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962).

*Barash v. Kates*, 585 F. Supp. 2d 1347, 1361 (S.D. Fla. 2006).

  Here, the LS Law Does' primary purpose of retaining counsel was to avoid direct

exposure to the Settlement Campaign and other tactics employed by the Plaintiff, through its

counsel, to coerce settlement.  Plaintiff's counsel was very aware that the LS Law Does were

represented by counsel in that Plaintiff's counsel has contacted the undersigned firm multiple

times during the course of this matter related to this representation.  Indeed, Plaintiff contacted

the undersigned on July 2, 2012 for the sole purpose of making a settlement offer to the LS Law

---

[6] The Magistrate Judge issued a report and recommendation ("Report") that the LS Law Does did not have standing
to move to dismiss the Complaint for improper joinder because they were "not named defendants." (*See* DE 27 at
2). The LS Law Does filed timely objections to the Report on the standing issue, which are incorporated herein, that
are currently pending before the Court. (*See* DE 28).  Moreover, the LS Law Does contend that if even if they did
not possess standing to move to dismiss the Complaint, they do have standing to move for sanctions for a violation
of Florida Rule of Professional Conduct 4-4.2(a) that directly implicates their personal privacy, as in the case at bar.
*Third Degree Films, Inc. v. Does 1-108*, CIV.A. DKC 11-3007, 2012 WL 669055 (D. Md. Feb. 28, 2012) (internal
quotation omitted) ("[H]owever minimal or 'exceedingly small' the Doe Defendants' interests here are, parties need
only have "some personal right or privilege in the information sought" to have standing to challenge a subpoena to a
third party").

Does. It is simply not credible to suggest that Plaintiff's counsel was not aware that the LS Law

Does were represented. Finally, if indeed Plaintiff's counsel contends that the improper contact

was unintentional, this fact should not allow Plaintiff to avoid sanctions. The undersigned has

contacted Plaintiff's counsel several times regarding improper contacts with clients.

## CONCLUSION

The LS Law Does request that the Court impose the appropriate sanction against Plaintiff

and/or Plaintiff's counsel to include, but not limited to, payment of the cost of filing this motion

for sanctions, and whatever relief the Court deems just and proper.

Respectfully submitted,

LALCHANDANI SIMON PL


By: /s/ Kabir Lalchandani
Danny Simon
Florida Bar No.:  0016244
danny@lslawpl.com
Kubs Lalchandani
Florida Bar No.:  0063966
kubs@lslawpl.com
990 Biscayne Blvd., Office 503
Miami, Florida 33132
Tel:     (305) 999-5291
Fax:     (305) 671-9282
*Attorneys for the LS Law Does*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was

served on all of those parties receiving electronic notification via the Court's CM/ECF electronic

filing as of July 23, 2012.


By: /s/ Kabir Lalchandani
Danny Simon, Esq.