## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

FIRST TIME VIDEOS, LLC,                   :
                                          :   Case No. 1:12-cv-21952-JAL
          Plaintiff,                      :
                                          :
v.                                        :
                                          :
DOES 1 – 25,                              :
                                          :
          Defendants.                     :
                                          :
_____  :

### ROBERT ROE'S (72.220.25.121) MOTION TO VACATE THE ORDER GRANTING PLAINTFF'S *EX PARTE* MOTION FOR EXPEDITED DISCOVERY [DOC. NO. 16], ISSUE A PROTECTIVE ORDER, AND/OR QUASH THE SUBPOENA, AND INCORPORATED MEMORANDUM OF LAW

Comes now, Robert Roe,[1] identified by the IP address 72.220.25.121, by and through undersigned counsel, and files this Motion and moves this Court to: vacate the Order Granting Plaintiff's *ex parte* Motion for Expedited Discovery [Doc. No. 16], issue a protective order preventing the disclosure of Robert Roe's personally identifying information, and/or quash the subpoena directed at Cox Communications, Inc. ("Cox"), and objects to the discovery sought. This Court should grant the relief requested.  In support, the Movant relies on the following Memorandum of Law:

### I.      INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff, First Time Videos LLC, is a Nevada corporation. (Amended Complaint ¶ 2.)[2] Plaintiff neither alleges nor appears to transact business in Florida or have any identifiable

---

[1]     As Plaintiff has technically brought this suit against 25 "John Doe" Defendants, but alleged identical causes of action against and seeks discovery on 520 other individuals that Plaintiff identifies as "joint tortfeasors," Movant, being one of these "joint tortfeasors," identifies himself as "Robert Roe."

[2]     It should be noted by the Court that Plaintiff's filing of the Amended Complaint was in direct violation of this Court's Order Granting Plaintiff's Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference [Doc.

connections to Florida. (*See generally* Am. Compl.)  Plaintiff claims to be the copyright holder of the obscene pornographic video production titled *FTV – Rikki* (the "Work"). (Am. Compl. ¶ 3.)  Plaintiff alleges that the Defendants John Does 1-25 and 520 other "joint tortfeasors" are liable for the infringement, contributory infringement, and civil conspiracy to commit infringement and contributory infringement of Plaintiff's copyright the Work. (*See generally* Am. Compl.)

Although Plaintiff has technically brought this lawsuit against a 25 John Doe Defendants, the Amended Complaint specifically alleges identical causes of action against 520 other individuals that Plaintiff refers to as "joint tortfeasors," yet are not named, even as John Does, in the lawsuit. (*See* Am. Compl.)

Plaintiff has also issued an unknown number of subpoenas seeking information about the identities of the John Doe Defendants and their "joint tortfeasors," including a subpoena issued out of the U.S. District Court for the District of Columbia directed at the Internet Service Provider ("ISP") Cox Communications, Inc. via its affiliate Cox District of Columbia Telecom, L.L.C. ("Cox") seeking information regarding the identity of the Movant (the "Subpoena"). (*See* Exhibit A, a true and correct copy of the Subpoena.)

Plaintiff's most recent pleading strategy of making allegations against hundreds of ISP subscribers under the guise of a few John Doe Defendants and many "joint tortfeasors" is its latest attempt to temporarily mask serious issues of personal jurisdiction and misjoinder in the face of stifling judicial headwind.  It is an obvious attempt to sidestep precedent adverse to the

---

No. 16]. (Order, at 2 ("Finally, it is ORDERED that Plaintiff may not file an amended complaint until further order of this Court.").)

Plaintiff,[3] and rob these individuals of the opportunity to challenge subpoenas seeking the disclosure of their confidential personally identifying information on file with their ISPs.

## II.    ARGUMENT

### A. Plaintiff has Not Overcome Robert Roe's Privacy Interest in the Information Sought Through Expedited Discovery

Courts have widely accepted that individuals have an important privacy interest in their personally identifying information. *See, e.g.*, *U.S. Dept. of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 501 (1994) (characterizing the privacy interest in a home address as "nontrivial"); *O'Kane v. United States Customs Svc.*, 169 F.3d 1308, 1309-10 (11th Cir. 1999) ("individuals have an important privacy interest in their home address"); *Sheet Metal Workers Int'l Ass'n v. U.S. Air Force*, 63 F.3d 994, 997 (10th Cir. 1995) (there is a "substantial privacy interest in personal identifying information, such as names and addresses"); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) ("the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant"). Further, in passing the Cable Communications Act of 1984, Congress recognized that subscribers have a privacy interest in their personally identifying information on record with their ISPs. H.R. Rep. 98-934, at *79 ("**The Congress is recognizing a right of privacy in personally**

---

[3]    For example, a similar plaintiff filed a complaint against 939 John Doe defendants identified by their IP addresses in *Millennium TGA v. Does 1-939*, No. 1:11-cv-2176-RLW (D.D.C. Dec. 7, 2012) ("Millennium I"). The plaintiff voluntarily dismissed that action a week after filing, when the case was assigned to Judge Wilkins who had earlier denied a motion for leave to engage in discovery of ISPs in *Nu Image, Inc. v. Does 1-939*, 799 F.Supp.2d 34 (D.D.C. 2011). Thereafter, the plaintiff re-filed essentially the same complaint in the Southern District of Texas, the primary difference being that the new complaint listed only one "Doe Defendant" and alleged 938 unnamed Doe "co-conspirators". *Millennium TGA, Inc. v. John Doe*, No. 4:11-cv-4501-VG (S.D. Tex., filed Dec. 20, 2012) ("Millennium II"). The 939 John Doe Defendants in *Millennium I* were identified by the exact same IP addresses and were alleged to have downloaded the exact same movie over the same periods of time as the single John Doe Defendant and co-conspirators in *Millennium II*.

**identifiable information collected and held by a cable company**…") (emphasis added); *see also* 47 U.S.C. § 551(c)(2).[4]

Plaintiff cites *Arista Records, LLC v. Doe 3*, 604 F.3d 100, 118-19 (2d Cir. 2010) for the proposition that Robert Roe's right to privacy is minimal. However, unlike here, the defendant in *Arista Records* conceded that he had engaged in the alleged improper downloading. Here, the alleged "joint tortfeasor" Robert Roe contests, and Plaintiff has insufficiently alleged, that he or she downloaded Plaintiff's copyrighted Work and is not even a defendant in this, or any, copyright infringement lawsuit.

The discovery requested through Plaintiff's Subpoena is based on the faulty assumption that the Internet subscribers identified in Exhibit A to the Amended Complaint are the individuals who actually infringed Plaintiff's copyright in the Work. However, the only individual that can be identified through an IP address is an ISP subscriber. Many courts have recognized that "the ISP subscribers to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes." *SBO Pictures, Inc. v. Does 1-3036*, No. 11-4220 SC, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011); *e.g. In re: Ingenuity 13 LLC*, No. 2:11-mc-0084-JAM-DAD, Order [Doc. No. 24], at *10 (E.D. Cal. Mar. 21, 2012) ("the identities of the subscribers associated with the identified IP addresses…would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization"); *Hard Drive Productions, Inc. v. Does 1-130*, No. C-11-3826-DMR, 2011 WL 553960, at *2 (N.D. Cal., Nov. 16 2011) ("Plaintiff concedes, in some cases the Subscriber and the Doe Defendant will not be

---

[4]     Many ISPs, including Cox, qualify as "cable operators" as defined by 47 U.S.C. § 522(5).

the same individual"); *Pac. Century Int'l Ltd. v. Does 1-101*, No. C-11-02533-DMR, 2011 WL 5117424, at *2 (N.D. Cal. Oct. 27, 2011).

An IP address provides only the location at which one of any number of computer devices may be deployed, especially when used with a wireless router. The United States District Court for the Eastern District of New York noted that:

> If you only connect one computer to the Internet, that computer can use the address from your ISP. Many homes today, though, use routers to share a single Internet connection between multiple computers. Wireless routers have become especially popular in recent years, avoiding the need to run network cables between rooms. If you use a router to share an Internet connection, the router gets the IP address issued directly from the ISP. Then, it creates and manages a subnet for all the computers connected to that router.

*In re: BitTorrent Adult Film Copyright Infringement Cases*, No. 2:11-cv-3995-DRH-GRB, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012) (quoting "What is an IP address?" available at http://computer.howstuffworks.com/internet/basics/question5492.htm). Thus, it is even less likely that an ISP subscriber (such as Robert Roe) carried out a particular computer function than that an individual who pays a home telephone bill made a specific call. It is possible that any family member living in that household, or visitor of that household, could have performed the complained of infringement. Unless the wireless router had been appropriately secured (and that security had not been compromised), neighbors or a passersby could access the Internet using the IP address assigned to a particular subscriber and download Plaintiff's film. Illustrating this fact, the court in *VPR International v. Does 1-1017*, 2:11-cv-02068-HAB-DGB (C.D. Ill. Apr. 29, 2011) cited an instance involving a raid by federal agents on a home that was linked to downloaded child pornography:

> The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the

downloads to a neighbor who had used multiple ISP subscribers' Wi-Fi connections (including a secure connection form the State University of New York).

*Id.* at 2 (citing Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/).

These circumstances create serious doubt as to Plaintiff's claim that the expedited discovery sought will produce information sufficient to identify the individuals who actually infringed upon Plaintiff's copyright.  As one judge observed:

> The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2."  The risk is not purely speculative; **Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of the individuals who actually downloaded or shared copyrighted material.**

*Digital Sin, Inc. v. Does 1-176*, --F.R.D.--, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012) (emphasis added); *also SBO Pictures*, 2011 WL 6002620, at *3.   In a denying expedited discovery in a similar case, the Eastern District of California noted:

> Although the revised Hansmeier declaration clarifies that he observed the co-conspirators' IP addresses engaged in the same downloading and uploading as John Doe, the declaration still does not establish that none of the internet subscribers whose information plaintiff seeks to obtain are innocent internet users.  The concern remains that potentially non-offending users' information is being sought…. Because plaintiff seeks information about the "ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, 'Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed.'" *Id.* (quoting *Hard Drive Prods.*, 2011 WL 5573960, at *2).

*First Time Videos, LLC v. Doe*, No. 2:11-cv-3478-GEB-EFB, 2012 WL 423714, at *5 (E.D. Cal. Dec. 30, 2011).

Whereas here it is uncertain, and indeed perhaps unlikely, that the Internet subscribers sought to be identified are the same individuals that downloaded Plaintiff's copyrighted Work, the Court cannot conclude with any reasonable certainty that Plaintiff has overcome Robert Roe's expectation of privacy in the information sought by the Subpoena.  As such, the Order granting Plaintiff's *ex parte* Motion for Expedited Discovery should be vacated, or a protective order should be issued preventing Cox from disclosing Robert Roe's personally identifying information, or the Subpoena should be quashed.

### B. Plaintiff has Not Demonstrated Good Cause to Conduct Early Discovery Regarding John Doe's Alleged "Joint Tortfeasors"

#### i. Lack of Relevance

Respectfully, this Court erred in finding that Plaintiff has demonstrated good cause to obtain expedited discovery of Robert Roe's personally identifying information. *Nu Image, Inc. v. Does 1-23,322*, 799 F.Supp.2d 34, 41 (D.D.C. 2011) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978)).

Recently, the United States District Court for the Eastern District of California presided over a case extremely similar to the instant lawsuit, *First Time Videos, LLC v. Doe*, No. 2:11-cv-3478-GEB-EFB (E.D. Cal. Dec. 30, 2011).  The plaintiff, First Time Videos, LLC, filed a complaint alleging causes of action for copyright infringement, civil conspiracy, and contributory infringement against a single John Doe defendant and 125 unnamed "co-conspirators," identified only by IP addresses. *First Time Videos*, Am. Compl. [Doc. No. 6], 2012 WL 663472.  The plaintiff filed an *ex parte* application seeking leave to take expedited discovery prior to the Rule 26 conference in order to obtain the identities of the John Doe

defendant and his co-conspirators. *First Time Videos*, Mot. for Misc. Relief [Doc. No. 7] & Hansmeier Decl. [Doc. No. 7-1]. After lengthy discussion regarding the prerequisite that "good cause" be demonstrated prior to granting expedited discovery, the court denied the plaintiff's request for expedited discovery regarding the alleged "co-conspirators." The court reasoned:

> [P]laintiff … has not shown good cause to conduct discovery regarding John Doe's alleged co-conspirators, whom plaintiff has not alleged as defendants in the amended complaint (naming only one doe defendant, John Doe, and asserting the plaintiff will "seek leave of the Court to amend this complaint to join John Doe's co-conspirators as defendants"…. [B]ecause plaintiff's complaint does not purport to sue John Doe's alleged "co-conspirators" at this time, in light of the potential that some of the alleged co-conspirators are innocent internet users, plaintiff has not shown that the need to discover their identities at this early stage outweighs the prejudice to those individuals, or that the request to subpoena all of those individuals' ISPs is reasonable at this time, in light of all the surrounding circumstances. *See* Hansmeier Decl., ¶ 27 (stating that Hansmeier "personally observed John Doe's IP address … downloading and uploading the Video in a BitTorrent swarm containing the other IP addresses listed in Exhibit A" and noting that those other users "*could have* aided John Doe").

*First Time Video*, Order [Doc. No. 9], at 5-6, 2012 WL 170167, at *3 (emphasis in original).

Undeterred by the court's order, the plaintiff filed a renewed application to conduct expedited discovery, attaching a revised Hasnmeier declaration. *First Time Video*, Mot. for Misc. Relief [Doc. No. 10]. However, the court again denied plaintiff's request. *First Time Video*, Order [Doc. No. 11], 2012 WL 423714. Because the court had granted expedited discovery regarding John Doe's identity, it rejected as "unconvincing" plaintiff's argument that without expedited discovery regarding the identities of the alleged co-conspirators it would have no means to name and serve anyone with process, compute damages attributed to the conspiracy, or establish testimony proving liability. *Id.* at 10, 2012 WL 423714, at *6. Importantly, the court found that:

> [T]he revised application does not address … the fact that plaintiff has not named the alleged co-conspirators in its complaint. *See* Dckt. No. 6 at 1, 9 (naming only one doe defendant, John Doe, and asserting that plaintiff will "seek leave of the

Court to amend this complaint to join John Doe's co-conspirators as defendants….").  Although plaintiff contends that it may seek leave to join the co-conspirators, plaintiff has not done so, and it is not clear that the court would permit such joinder. *See, e.g.*, *SBO Pictures, Inc.*, 2011 WL 6002620, at *2-4; *Hard Drive Prods.*, 2011 WL 5573960, at *4; *Third Degree Films*, 2011 WL 5374569, at *3-4; *AF Holdings LLC*, 2011 WL 2912909, at *2-4; *Pac. Century Int'l Ltd.*, 2011 WL 5117424, at *2-4.

*Id.* at 9-10, 2012 WL 423714, at *6.  Moreover, the court reasoned that:

> Although the revised Hansmeier declaration clarifies that he observed the co-conspirators' IP addresses engaged in the same downloading and uploading as John Doe, the declaration still does not establish that none of the internet subscribers whose information plaintiff seeks to obtain are innocent internet users. The concern remains that potentially non-offending users' information is being sought.  As many courts have noted, "the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes." *SBO Pictures, Inc.*, 2011 WL 6002620, at *3; *Pac. Century Int'l Ltd.*, 2011 WL 5117424, at *2; *IO Group, Inc. v. Does 1-19*, 2011 WL 772909, at *1 (N.D. Cal. Mar. 1, 2011).  "For example, '[ISP] subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff's works.'" *SBO Pictures, Inc.*, 2011 WL 6002620, at *3 (quoting *Third Degree Films v. Does 1-3577*, 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011)).  Because plaintiff seeks information about the "ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, 'Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed.'" *Id.* (quoting *Hard Drive Prods.*, 2011 WL 5573960, at *2). Additionally, as numerous other courts have noted, if the undersigned were to grant plaintiff's renewed request for expedited discovery regarding the alleged co-conspirators, "[p]laintiff would likely send settlement demands to the individuals whom the ISP identified as the IP subscriber. 'That individual – whether guilty of copyright infringement or not – would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded.  This creates great potential for a coercive and unjust settlement.'" *SBO Pictures, Inc.*, 2011 WL 6002620, at *3 (quoting *Hard Drive Prods.*, 2011 WL 5573960, at *3).

*Id.* at 8-9, 2012 WL 423714, at *5.

When courts have granted expedited discovery as to the identities of non-party "joint tortfeasors", the resulting subpoenas have routinely been quashed by the issuing courts when the

plaintiffs moved to compel compliance. *See, e.g.*, *Millennium TGA, Inc. v. Comcast Cable Comm'ns LLC*, --F.Supp.2d--, 2012 WL 2371426 (D.D.C. 2012); *Pac. Century Int'l, Ltd. v. Does 1-37*, --F.Supp.2d.--, 2012 WL 1072312 (N.D. Ill. 2012).

In *Millennium TGA* the plaintiff had moved to compel compliance with a subpoena that it had caused to be issued out of the District of Columbia. *Millennium TGA*, 2012 WL 2371426, at *1-2. The subpoena sought the personally identifying information of 351 Comcast subscribers, who were identified as a single John Doe defendant and unknown "co-conspirators" in Plaintiff's complaint for copyright infringement filed in the Southern District of Texas. *Id.* at *2. The court denied the plaintiff's request for the identifying information of the 350 "co-conspirators" sought by the subpoena because such discovery was unduly burdensome to the individuals who did not reside in that district, and was without good cause. *Id.* at *6-7.

> The Fourth Circuit, joining other courts, has recently held that a state law civil conspiracy claim is preempted by the federal Copyright Act. *Tire Eng'g & Distrib'n, LLC v. Shandong Linglong Rubber Co.*, Nos. 10-2271, 10-2273, 10-2321, 2012 WL 2036971, *15 (4th Cir. Jun. 6, 2012); *accord Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F.Supp.2d 215, 229 (S.D.N.Y. 2012); *Tegg Corp. v. Beckstrom Elec. Co.*, 650 F.Supp.2d 413, 423-28 (W.D. Penn. 2008); *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F.Supp.2d 953, 960 (N.D. Ill. 2002); *Hoey v. Dexel Sys. Corp.*, 716 F.Supp. 222, 224 (E.D. Va. 1989); *Aqua Bay Concepts Inc. v. Grosse Point Board of Realtors*, 24 U.S.P.Q.2d 1372, 1376 (E.D. Mich. 1992); *see also Pacific Century International, Ltd. v. Does 1-37*, --F.Supp.2d--, 2012 WL 1072312, *4 (N.D. Ill. May 21, 2012) (ruling that plaintiffs in BitTorrent copyright infringement action had not, and could not, plausibly plead facts establishing an agreement, a required element of the civil conspiracy claim). If the civil conspiracy claim is invalid, there is no good cause for discovery related to the alleged co-conspirators. As our circuit court has explained, "[t]he federal courts are not free-standing investigative bodies whose coercive power may be brought to bear at will in demanding documents from others. Rather, the discovery devices in federal court stand available to *facilitate the resolution of actions cognizable in federal court*." *Houston Business Journal, Inc. v. Office of Comptroller of Currency, U.S. Dept. of Tresury*, 86 F.3d 1208, 1213 (D.C. Cir. 1996) (emphasis added); *see also Nu Image*, 799 F.Supp.2d at 36-37.

*Id.* at *6.

While the Eastern District of California and the Eastern District of Virginia did grant expedited discovery to identify the John Doe defendant and alleged "joint tortfeasors" in *Pac. Century Int'l, LTD v. Doe*, No. 11-3479 (E.D. Cal. Jan 19, 2012) and *First Time Videos LLC v. Doe*, No. 11-690 (E.D. Va. Jan 9, 2012), the Northern District of Illinois found the discovery to be inappropriate when the plaintiffs moved to compel compliance with the related subpoenas issued out of that court. *Pac. Century Int'l, Ltd. v. Does 1-37*, --F.Supp.2d.--, 2012 WL 1072312 (N.D. Ill. 2012). The court denied these plaintiffs' motions to compel because "the identity of individuals connected with nonparty IP addresses is not relevant to the pending claims." *Id.* at *4. The court reasoned that:

> In light of the structure of the BitTorrent system, subpoenas seeking the identity of users of non-party IP addresses are not reasonably calculated to lead to the discovery of evidence relevant to the pending claims. BitTorrent users remain anonymous to other BitTorrent users, and have no connection to them beyond the mere fact that they downloaded the same file. It is therefore not a reasonable calculation that the individuals connected to the subpoenaed IP addresses will have any discoverable information related to the current defendants.

*Id.* (footnote omitted).

The plaintiffs sought to alter or amend this order, asserting that they must show that the individuals connected to the non-party IP addresses directly infringed the plaintiffs' copyrights in order to show the Doe defendants' contributory infringement, and thus the discovery sought was relevant to their claim against the doe defendants. *Id.* at *10. However, the *Pacific Century* Court denied the plaintiffs' motion, adopting the contrary argument that, like here, the large time period between the defendants' alleged downloading activity created a substantial possibility that the defendants were not sharing the copyrighted work with each other.[5] *Id.* at *7-12.

---

[5] The court also dismissed the plaintiffs' contention that that their need for discovery of non-parties identities was urgent "because the ISPs have a duty to preserve 'relevant evidence over which [they] had control and reasonably knew or could reasonably foresee was material to a potential legal action.'" *Id.* at *11 n.4 (citing *China*

As such, the Order granting Plaintiff's *ex parte* Motion for Expedited Discovery should be vacated, or a protective order should be issued preventing Cox from disclosing Robert Roe's personally identifying information, or the Subpoena should be quashed.

> **ii.      The *Declaration of Peter Hansmeier* Does Not Support a Finding of Good Cause for Expedited Discovery**

In support of its *ex parte* Motion for Expedited Discovery [Doc. No. 12], Plaintiff provided the underlying court with the Declaration of Peter Hansmeier [Doc. No. 12-2].  Mr. Hansmeier is held out to be Plaintiff's expert who allegedly identified the 25 IP addresses associated with the Doe Defendants and 520 IP addresses associated with the "joint tortfeasors" as having infringed upon Plaintiff's copyright in the Work.  However there are serious issues with Mr. Hansmeier's Declaration that should be addressed by this Court before enforcing the Subpoena.

Mr. Hansmeier asserts that the software used to identify the allegedly infringing IP addresses is "proprietary"; accordingly, no party has or is permitted to inquire into or otherwise challenge the process. *See* Hansmeier Decl. ¶ 16.  This need for scrutiny is especially pertinent where, as here, academic studies by recognized experts in the field have made clear the technology used to identify infringers is subject to a statistically significant number of "false-positives" in its identification of IP addresses. *See* Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks –or– Why My Printer Received a DMCA Takedown Notice*, 3rd USENIX Workshop on Hot Topics in Security 2008, (July 29, 2008) http://www.usenix.org/event/hotsec08/tech/full_papers/piatek/piatek.pdf ("[C]opyright holders utilize inconclusive methods for identifying infringing BitTorrent users.  We were able to

---

*Ocean Shipping (Grp.) Co. v. Simone Metals Inc.*, No. 97 C. 2694, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999)).

generate hundreds of DMCA takedown notices for machines under our control at the University of Washington that were not downloading or sharing any content.").

Further, nowhere in Mr. Hansmeier's declaration does he provide his credentials or those of his company, 6881 Forensics, LLC.  Internet searches for 6881 Forensics, LLC produce little information other than similar declarations of Mr. Hansmeier that have been filed in analogous lawsuits across the country.  Neither Plaintiff nor Mr. Hansmeier identifies 6881 Forensics, LLC's state of incorporation.  A search for "6881 Forensics" using Dun & Bradstreet, Inc.'s 50 state company database yielded no exact matches. (*See* Exhibit B).

As such, the Order granting Plaintiff's *ex parte* Motion for Expedited Discovery should be vacated, or a protective order should be issued preventing Cox from disclosing Robert Roe's personally identifying information, or the Subpoena should be quashed.

### C.      Failure to Allege and Actual Lack of Personal Jurisdiction

The Amended Complaint fails to allege the Court's personal jurisdiction over the John Doe Defendants and the alleged "joint tortfeasors".  While Plaintiff undoubtedly believes that it is not required to plead the basis of personal jurisdiction over the Defendants and alleged "joint tortfeasors", such an undervaluation of the role of personal jurisdiction and Plaintiff's pleading obligations is patently incorrect.  This was recently explained by Judge Steel in presiding over a similar case in the Middle District of Florida.

> The court's personal jurisdiction over a defendant is not a meaningless gesture.  "The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) (citing cases).  The requirement of personal jurisdiction flows from the Due Process Clause, and "recognizes and protects an individual liberty interest.  It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.  Thus, the test for personal jurisdiction requires that the maintenance of the suit not offend traditional notions of fair play and substantial justice." *Id.* at 702-03 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945) (internal quotation marks and ellipses omitted). "A court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). For this reason, "[a]s a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's case." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) (citations omitted).

*Nu Image, Inc. v. Does 1-3,932*, No. 2:12-cv-545-JES-SPC, 2012 WL 1890829, at \*2 (M.D. Fla. May 24, 2012). The court went on to specifically state that:

> Contrary to plaintiff's argument, its Complaint does need to sufficiently allege personal jurisdiction, although the facts alleged need only make out a prima facie case of personal jurisdiction. *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1328-29 (11th Cir. 2008); *Posner*, 178 F.3d 1214. Vague and conclusory allegations in a complaint are insufficient. *Snow*, 450 F.3d at 1318.

*Id.* Here, the Amended Complaint makes no allegations at all as to the Court's personal jurisdiction over the Defendants and "joint tortfeasors" and Plaintiff has presented the Court with no evidence that such jurisdiction exists. *See* Am. Compl.

Further, as to any Defendants and/or "joint tortfeasors" residing outside of Florida, it is unlikely that Plaintiff could prosecute a copyright infringement action against them in this case. It is the law in this Circuit that the copyright venue statute is a "special venue statute," and thus a copyright case "may be brought only in the district where the defendant 'resides or may be found.'" *Time, Inc. v. Manning*, 366 F.2d 690, 696 (5th Cir. 1966)[6] (quoting 28 U.S.C. § 1400(a)).

Movant does not reside in Florida, lacks any meaningful or continuous contacts with this state, and contests this Court's personal jurisdiction. (*See* Exhibit C, the Declaration of Robert Roe.) Even with the limited information about Robert Roe that Plaintiff possesses (his IP address), Plaintiff could have easily and economically determined that both this Court and the court that issued the Subpoena likely lack the requisite personal jurisdiction over Movant using

---

[6] Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

geolocation services. *E.g. Nu Image, Inc. v. Does 1-23,322*, 799 F.Supp.2d 34, 40-41 (D.C.C. 2011); *see also Third World Media, LLC v. Does 1-1,243*, No. 10-00090-JPB-JES, Doc. No. 16, p. 5 n.2 (N.D. W.Va. Dec. 16, 2010) (discussing testimony presented to the court that "the physical location of any I.P. address can be determined from a simple Google search").

In *Nu Image, Inc. v. Does 1-23,322*, the court extensively discussed geolocation services and concluded that they were sufficient to establish "a good faith basis to believe a putative defendant *may* be [a resident of the court's jurisdiction] if a geolocation service places his/her IP address within the [jurisdiction], or a city located within 30 miles of the [jurisdiction]." *Id.* at 41. The court made a point to note that even the evidence that Plaintiff presented to discredit geolocation services stated that "[e]ven when not accurate, though, geolocation can place users in a bordering city, . . . [t]his happens because a common method for geolocating a device is referencing its IP address against similar IP addresses with already known locations." *Id.* at 40-41 (quoting *How accurate is GeoLocation?* What Is My IP Address, http://whatismyipaddress.com/geolocation-accuracy).

"While jurisdictional discovery is liberally granted, a plaintiff is not entitled to take it solely because she requests it – she still must make the requisite showing of good cause.  Thus, a plaintiff must, *inter alia*, reasonably demonstrate that she can supplement her jurisdictional allegations through discovery." *Bond v. ATSI/Jacksonville Job Corps Ctr.*, 811 F.Supp.2d 417, 423-24 (D.D.C. 2011) (internal quotations and citations omitted).  "Where Plaintiff has made no effort to determine jurisdiction, the administration of justice is not served by requiring out-of-state recipients of subpoenas to bring challenges to the subpoenas in far-flung jurisdictions. Further, '[f]rom a judicial economy perspective, it makes more sense for Plaintiff to bring its case against these [doe defendants and "joint tortfeasors"] in the court where they have a good

faith belief that venue and personal jurisdiction are attainable and the case can actually be prosecuted.'" *New Sensations, Inc. v. Does 1-1,474*, No. C-11-2778 MEJ, slip op., 2011 WL 7460100, at *3 (N.D. Cal. Dec. 7, 2011) (quoting *Nu Image, Inc. v. Does 1-23,322*, 2011 WL 3240562, at *5 (D.D.C. Jul. 29, 2011)); *also Patrick Collins, Inc. v. Does 1-2,590*, No. C-2766 MEJ, slip op., 2011 WL 7460101, at *3 (N.D. Cal. Dec. 7, 2011).

As such, the Order granting Plaintiff's *ex parte* Motion for Expedited Discovery should be vacated, or a protective order should be issued preventing Cox from disclosing Robert Roe's personally identifying information, or the Subpoena should be quashed.

### D.    **Plaintiff's Arbitrary Issuance of the Subpoena from the District Court for the District of Columbia**

Plaintiff and its attorneys have an affirmative duty to "take reasonable steps to avoid undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1).  The Supreme Court has noted that "the discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they 'be construed to secure the just, *speedy*, and *inexpensive* determination of every action'…and the district courts should not neglect their power to restrict discovery where 'justice requires [protection of] a party or person from…undue burden or expense.'" *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (emphasis in original) (quoting Fed. R. Civ. P. 1, 26); *also Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007) (admonishing district courts to be mindful of "whether the discovery sought is 'obtainable from some other source that is more convenient, less burdensome, or less expensive'").

Without rhyme or reason for doing so, Plaintiff has unduly burdened Robert Roe by issuing the Subpoena from the U.S. District Court for the District of Columbia.  Plaintiff is a Nevada corporation and neither alleges nor appears to transact business in or have any identifiable connections to the District of Columbia. (Am. Compl. ¶ 2.)  Plaintiff neither alleges

nor does it appear that any of the John Doe Defendants are residents of or have any identifiable connections to the District of Columbia. *See generally id.*  Cox is incorporated in Delaware. Thus, there is nothing in the record showing why this forum was appropriate to issue a subpoena for the personal identifying information of Robert Roe and the other Defendants and "joint tortfeasors" from the District of Columbia.

It is not at all clear why Plaintiff chose to issue the Subpoena from this Court except to avail itself of more favorable precedent and/or increase the burden of defending this action by unnecessarily expanding this litigation to multiple jurisdictions that are thousands of miles away from each other.

This issue was recently addressed by the District Court for the District of Columbia in *Millennium TGA, Inc. v. Comcast Cable Communications LLC*, --- F.Supp.2d ---, 2012 WL 2371426 (D.D.C. June 25, 2012).  There, the plaintiff had moved to compel compliance with a subpoena that it had caused to be issued out of the District of Columbia. *Id.* at *1-2.  The subpoena sought the personally identifying information of 351 Comcast subscribers, who were identified as a single John Doe defendants and unknown "co-conspirators" in Plaintiff's complaint for copyright infringement filed in the Southern District of Texas. *Id.* at *2.  The Court noted that "348 of the 351 Comcast subscribers whose personal identifying information is sought – including the only named defendant – reside somewhere other than the District of Columbia." *Id.* at *5.  The Court then denied Plaintiff's request for the identifying information of the single John Doe defendant and "co-conspirators" because "[i]t is unduly burdensome to force that subscriber to travel over 1000 miles to the District of Columbia to protect his or her rights, particularly when the case is pending in Texas and Comcast can be served with a subpoena in Texas." *Id.* at *6.  The Court instructed that:

> Plaintiff can then serve a subpoena upon Comcast to obtain the identifying information for any subscriber in each of the judicial districts where the subscribers reside (which is also where any action against any Doe defendant linked to any particular subscriber would be pending).  Such a procedure complies with the admonition of our circuits court to consider "whether the discovery sought is 'obtainable form some other source that is more convenient, less burdensome, or less expensive.'" *Watts*, 482 F.3d at 508 (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).

*Id.* at *7.

In a case in the Southern District of Florida, analogous to the underlying action, Judge Seitz recently questioned Plaintiff's counsel's tactic of issuing a similar subpoena out of the District Court for the District of Columbia when there were no apparent connections between the underlying litigation, subpoenaed non-party, and/or the location of the subpoenaed information and that district.

> Pursuant to FED. R. CIV. P. 45(c)(1), parties have an obligation to "avoid imposing undue burden or expense on a person subject to the subpoena."  Additionally, FED. R. CIV. P. 1 requires that the parties proceed in a cost-efficient manner.  It is unclear why the subpoenas were issued in another judicial district for information about Doe Defendants who allegedly reside in this district.

*Sunlust Pictures, LLC v. Does 1-120*, No. 1:12-cv-20920-PAS, Omnibus Order [Doc. No. 26], at 10 n.10 (S.D. Fla. July 24, 2012).

Plaintiff's arbitrary issuance of the Subpoena from the District of Columbia unnecessarily burdens Robert Roe by expanding this litigation to a second forum thousands of miles from both his residence and this Court, in which the underlying litigation is pending.  As such, the Order granting Plaintiff's *ex parte* Motion for Expedited Discovery should be vacated, or a protective order should be issued preventing Cox from disclosing Robert Roe's personally identifying information, or the Subpoena should be quashed.

### III.    CONCLUSION

Plaintiff tactics demonstrate that it is far more interested in obtaining ISP subscribers' contact information for use in extracting large settlements than the formalities of the legal process and privacy interests of the affected individuals.  Plaintiff has failed to identify Robert Roe or any of the 520 alleged "joint tortfeasors" as Defendants in this lawsuit, yet it seeks discovery of their confidential personally identifying information on record with their ISPs. Plaintiff has failed to demonstrate good cause for the expedited discovery of Robert Roe's personally identifying information.  Joinder of Robert Roe as a defendant in this lawsuit would be improper as this Court lacks personal jurisdiction over Robert Roe and the activities alleged against the Defendant do not arise out of the same transaction or occurrence as the accusations made against the alleged "joint tortfeasor" Robert Roe.  The discovery sought by the Subpoena will subject Robert Roe to annoyance, embarrassment, undue burden, is oppressive, and seeks information to which he has a congressionally recognized right to privacy.

WHEREFORE, premises, considered, Robert Roe respectfully requests that this Court:

(a) Vacate the Order granting Plaintiff's *ex parte* Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference [Doc. No. 16];

(b) Issue a protective order pursuant to Fed. R. Civ. P. 26 prohibiting the ISP Cox from disclosing any of Robert Roe's personally identifying information;

(c) Quash the Subpoena; and/or

(d) Grant such other and further relief to which Robert Roe may justly be entitled.

Respectfully submitted,

TAMAROFF & TAMAROFF, P.A.
The Alfred I. DuPont Building
169 East Flagler Street, Suite 1633
Miami, Florida 33131
Tel: (305) 350-7440
Fax: (305) 350-7441
admin@tamarofflaw.com

By:   /s/ David F. Tamaroff                  .
      **DAVID F. TAMAROFF**
      Florida Bar No. 92084
      david@tamarofflaw.com
      **DANIEL F. TAMAROFF**
      Florida Bar No. 92083
      *Attorneys for Robert Roe*


## CERTIFICATE OF COMPLIANCE WITH Fed. R. Civ. P. 26(c)(1) and S.D. Fla. Loc. R. 7.1(a)(3)

I have conference with counsel for the opposing party in a good faith effort to resolve the issues raised in this Motion and we were unable to agree on the resolution of the Motion.

By:   /s/ David F. Tamaroff                  .
      **DAVID F. TAMAROFF**


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of August, 2012, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

By:   /s/ David F. Tamaroff                  .
      **DAVID F. TAMAORFF**